IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

CASSANDRA PEELE, Individually and on behalf of her minor son K.M.,

Plaintiff,

v.

JOSEPH H. CAMPOS II, ACTING DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAII; ESERA ESERA; ELIZABETH SAGA-PATAIA; JANE and/or JOHN DOES 1–25; and DOE ENTITIES 1–10,

Defendants.

Case No. 26-cv-00473-DKW-RT

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, (2) GRANTING DEFENDANTS' MOTION TO DISMISS, AND (3) DISMISSING THE COMPLAINT WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**[1]

## INTRODUCTION

Before the Court are *pro se* Plaintiff Cassandra Peele's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), filed on September 9, 2026, Dkt. No. 6, and Defendants' Motion to Dismiss Peele's Complaint, filed October 7, 2026, Dkt. No. 21. As explained below, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), Peele's TRO Motion is DENIED, and

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

Defendants' Motion to Dismiss is GRANTED. Peele's Complaint is DISMISSED without prejudice and without leave to amend.

## FACTUAL & PROCEDURAL BACKGROUND

On September 9, 2026, Peele initiated this action by filing her Complaint and TRO Motion. Dkt. Nos. 1, 6. The Complaint names as defendants Joseph H. Campos II, Acting Director of the Department of Human Services ("DHS"), State of Hawaii; Esera Esera; and Elizabeth Saga-Pataia ("Defendants"). Dkt. No. 1. It asserts two causes of action: first, for due process violations under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, *id.* ¶¶ 25–27; and second, for racketeering under 18 U.S.C. § 1962 ("RICO"), *id.* ¶¶ 28–29. The Complaint and TRO Motion allege substantially the same facts, which follow.[2]

On March 13, 2023, a DHS representative, under the supervision of Esera, Saga-Pataia, and officers from the Honolulu Police Department, removed Peele's ten-year-old son, K.M., from her care. Dkt. No. 1 ¶ 12. This seizure was precipitated by K.M.'s father dropping him off at school when it was closed for spring break, an act, according to DHS, that the father should not have been in a position to do since he lacked custodial rights.[3] *Id.* ¶ 13. Peele alleges that no

---

[2]The Court assumes the facts alleged in the Complaint and TRO Motion to be true for the purposes of this Order. *See Dudley v. Boise State Univ.*, 152 F.4th 981, 987 (9th Cir. 2025); *Le v. Huynh*, 2023 WL 2504757, at *1 n.1 (N.D. Cal. Mar. 13, 2023).
[3]The Complaint actually refers to the father's "visitation," rather than custodial, rights, but the context of Peele's description suggests "custodial" is the correct reference, and the Court liberally construes the *pro se* filing as such. *See infra*, note 5.

documentation was made available at the time confirming either the custodial restriction or authorization for K.M. to be taken into DHS custody. *Id.* ¶¶ 14–15. Peele further alleges that no petition had been filed or hearing conducted before her son was taken. *Id.* ¶ 16. However, she acknowledges a subsequent Family Court hearing concerning K.M.'s removal, during which the court ordered custody of K.M. to DHS. *Id.* ¶ 17. Peele alleges that the removal decision was based on "perjured" testimony by Saga-Pataia regarding the presence of police officers and DHS representatives during K.M.'s removal. *Id.* Peele also alleges that, after the hearing, DHS and Saga-Pataia did not make reasonable family reunification efforts prior to placing K.M. in foster care, *id.* ¶ 18, and that she has been denied reunification with her son since his removal, despite complying with directives from Esera and DHS, *id.* ¶ 19.

On April 29, 2026, DHS filed a motion in Family Court to terminate Peele's parental rights ("Parental Termination Motion"). *See id.* ¶ 20. This motion was set for hearing on September 9, 2026[4]—the same day Peele filed the Complaint and TRO Motion in the instant action. *See id.*; Dkt. No. 6.

Peele's TRO Motion seeks to restrain Defendants "from continuing to seize and restrain K.M. and failing to return him forthwith to his mother." Dkt. No. 6 at 1. On September 25, 2026, Defendants filed their Opposition to Peele's TRO

[4]The outcome of the Parental Termination Motion is not in the record before this Court.

Motion, arguing, *inter alia*, that Peele's claims are time-barred, her request is barred by the *Rooker-Feldman* and *Younger* abstention doctrines, and Peele has failed to state a claim. Dkt. No. 18. On October 2, 2026, Peele replied in support of her TRO Motion. Dkt. No. 20. She argues that her claims are timely under the continuing violation doctrine, that neither abstention doctrine bars federal review of her case, that she states a cognizable claim under Section 1983, and that her claims satisfy the federal injunction standard. *Id.*

On October 7, 2026, Defendants moved to dismiss Peele's Complaint, arguing that Peele's Section 1983 claim is time-barred, her claims are subject to abstention under the domestic relations exception, and her Complaint fails to state a claim under either Section 1983 or RICO. Dkt. No. 21. On October 21, Peele opposed Defendants' Motion to Dismiss. Dkt. No. 23. She argues, *inter alia*, that she should be given leave to identify actionable conduct that would extend the statute of limitations, her Section 1983 claims are timely under the continuing violation doctrine, neither the domestic relations exception nor the *Younger* and *Rooker-Feldman* doctrines bar federal court review, she states a cognizable claim under Section 1983, and she should be granted leave to amend. Dkt. No. 23. On November 4, 2026, Defendants replied, arguing that Peele's Complaint fails to state a claim against the defendants sued in their individual capacities, and that the

continuing violation doctrine does not apply. Dkt. No. 26. With briefing on the pending motions complete, this Order now follows.

**STANDARD OF REVIEW**

Peele seeks a temporary restraining order and a preliminary injunction. Dkt. No. 6. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *E.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Defense Council*, 555 U.S. 7, 24 (2008). For a plaintiff to be awarded a preliminary injunction, he "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Provided that these factors are met, a court may also issue a temporary restraining order or preliminary injunction where "a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (ellipses and citation omitted). However, if a party "has not shown any chance of success on the merits, no further determination of

irreparable harm or balancing of hardships is necessary." *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007).

Defendants move to dismiss Peele's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. Nos. 21, 21-1. Rule 12(b)(1) allows a party to move the Court to dismiss an action when it "lack[s] subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). The Court has subject matter jurisdiction over, *inter alia*, "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Not only must the suit arise under the laws of the United States, but it must also present a live "case" or "controversy" to be justiciable in federal court. *See* U.S. CONST. art. III § 2; *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'"). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (internal citation and quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citation omitted). Nonetheless, justice does not require leave to amend when: (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *AmerisourceBergen*

*Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

## **DISCUSSION**[5]

Under *Younger v. Harris*, federal courts must abstain from hearing civil cases where there are parallel state proceedings that "(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Cook v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)). If these elements are met, courts next consider "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *ReadyLink*, 754 F.3d at 759.

Here, each of the *Younger* factors is satisfied, and no exceptions apply. First, this case involves ongoing state judicial proceedings. The Complaint describes both a hearing that was held awarding custody of K.M. to DHS, and the Parental Termination Motion, filed April 29, 2026, that was scheduled for hearing on September 9, 2026. Dkt. No. 1 ¶¶ 17, 20. Peele also continues to acknowledge

[5]As Peele is proceeding *pro se*, the Court has liberally construed her filings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

the ongoing nature of the state proceedings in her responsive briefs. *See* Dkt. No. 23 at 5–6. The first *Younger* requirement is therefore established.

The second *Younger* prong may be satisfied when a case constitutes a "quasi-criminal enforcement action[]."[6] *Cook*, 879 F.3d at 1039 (internal citations omitted). In *Sprint Communications, Inc. v. Jacobs*, the Supreme Court defined quasi-criminal actions as those that "are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act," and explained that "a state actor is routinely a party to the state proceeding and often initiates the action." 571 U.S. 69, 79 (2013). That is precisely the case here: there is perhaps no greater way to sanction a parent than by taking away their child, and the state is necessarily involved in such proceedings. Indeed, when laying out this test, the Court cited *Moore v. Sims*, which involved state-initiated child custody proceedings, as an archetypical example of a quasi-criminal action. *See id.* (citing 442 U.S. 415, 419–20 (1979)).

Next, the third *Younger* factor is easily met because Hawai‘i has an important interest in enforcing its state family laws and maintaining the integrity of its family court proceedings. Although the Ninth Circuit has emphasized that this

---

[6]The second *Younger* prong may also be satisfied when a case "involv[es] a state's interest in enforcing the orders and judgments of its courts." *Cook*, 879 F.3d at 1039. However, because the Court concludes that the state court proceedings fall into the first category, it declines to analyze the second as unnecessary.

is not the end of the inquiry, it has simultaneously acknowledged that "states have an *undeniable* interest in family law." *Cook*, 879 F.3d at 1040 (emphasis added). This follows in a long line of precedents establishing that "[f]amily relations are a traditional area of state concern." *See Moore*, 442 U.S. at 435; *see, e.g.*, *United States v. Windsor*, 570 U.S. 744, 767 (2013) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States") (internal citation omitted); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610 (9th Cir. 2000) (explaining that states have "a vital interest" in protecting their judicial systems, particularly "in the field of domestic relations, over which federal courts have no general jurisdiction, and in which the state courts have a special expertise and experience") (internal citation omitted)).

Fourth, Peele has not shown that there were procedural bars to raising her federal claims in the Family Court action. Under this prong, "[a] federal court should abstain 'unless state law clearly bars the interposition of the [federal] claims.'" *See Commc'ns Telesystems Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 424 (1982)). This is true even if federal issues have not "been actually litigated in the state proceedings." *Id.* at 1019–20. Thus, as

Peele has provided nothing to show state law bars her federal claims, the fourth factor likewise favors abstention.

Because "these 'threshold elements' are met," the Court next considers whether this action "would have the practical effect of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759. "Although 'direct' interference is not required, there must be some interference with state court proceedings for *Younger* to apply." *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1124 (D. Haw. 2017). The Court concludes that this is the case here. The Family Court already determined that K.M. should be in DHS's custody, and it continues to oversee that matter, including through the parental rights' termination process referenced in Peele's pleadings. Peele now asks this Court to effectively invalidate the state court's order by awarding her custody of K.M., instead of DHS.[7] For this Court to grant Peele her requested relief would be to practically enjoin the state court proceedings. *See, e.g.*, *Calvary Chapel San Jose v. Cody*, 2023 WL 2638318, at *9 (N.D. Cal. Mar. 10, 2023), *aff'd sub nom. Calvary Chapel San Jose v. Cnty. of Santa Clara*, 2024 WL 1635554 (9th Cir. Apr. 16, 2024).

Finally, the Court must consider whether any exception to *Younger* applies—that is, whether "bad faith, harassment, or some other extraordinary

[7]Specifically, the Complaint prays that this Court declare "that Plaintiff is the sole person entitled to custody and possession of her son" and that this Court restrain DHS from continuing to seize him. Dkt. No. 1 at 6.

circumstances" in the state court proceedings make abstention inappropriate. *See Kenneally v. Lungren*, 967 F.2d 329, 332 (9th Cir. 1992) (internal citations omitted). Peele argues that the Family Court proceedings have been tainted by "perjured testimony," "bad faith," and "fraud" on the part of Defendants. *See* Dkt. No. 1 ¶ 17; Dkt. No. 6-4 at 8–11; Dkt. No. 20 at 2–7. Although the allegations in Peele's Complaint and TRO Motion are largely conclusory, she later suggests that her concerns arise from Defendants' alleged misrepresentations concerning K.M.'s removal, purported discrepancies between various reports, and the alleged "suppression of exculpatory evidence."[8] *See* Dkt. No. 20 at 3–5; Dkt. No. 23 at 3–6.

"[I]n the *Younger* abstention context, bad faith 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *Stockton v. Brown*, 152 F.4th 1124, 1138 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2627 (2026) (internal citations omitted). Bias may also exist "where a court [or tribunal] has prejudged, or reasonably appears to have prejudged, an issue." *Morning Hill Foods*, 259 F. Supp. 3d at 1125 (quoting *Kenneally*, 967 F.2d at 332). In addition, it is the party raising bad faith or bias that has the burden of "overcom[ing] a presumption of honesty and integrity in

---

[8]Peele's references to the suppression of evidence seem to refer to the Safe Family Home Report, available at Dkt. No. 6-2. *See, e.g.*, Dkt. No. 20 at 4; Dkt. No. 23 at 6.

those serving as adjudicators." *Id.* Since Peele has not shown that there was either "repeated harassment by enforcement authorities with no intention of securing a conclusive resolution" or "pecuniary bias by the tribunal," *id.* (quoting *Partington v. Gedan*, 961 F.2d 852, 861–62 (9th Cir. 1992)), the Court is unconvinced that "this is one of the rare cases" where a *Younger* exception applies, *see Stockton*, 152 F.4th at 1139. Indeed, Peele's description of the process being afforded by the state court makes evident quite the opposite.

Because all of the *Younger* factors are satisfied and no exceptions apply, the Court determines that *Younger* abstention is appropriate. Generally, "*Younger* abstention requires *dismissal* of the federal action." *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988) (emphasis in original). Although the Court understands that a stay, rather than dismissal, may be appropriate where a plaintiff seeks monetary damages, the Court finds, based on the current record, that this case presents a situation where dismissal is proper. *See Gilbertson v. Albright*, 381 F.3d 965, 984 n.18 (9th Cir. 2004). Because no amendment could cure the application of *Younger* to this case, dismissal is without leave to amend. *See Wasson v. Riverside Cty.*, 234 F. App'x 529, 530 (9th Cir. 2007).

Further, in an effort to afford Peele the opportunity to pursue her claims in state court if she so chooses, the Court abstains from reaching the merits, declines to address the other arguments raised in the parties' briefs, and dismisses the action

without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal quotation marks, ellipsis, and citation omitted); *Wasson*, 234 F. App'x at 530 (concluding that a district court should have dismissed claims pursuant to *Younger* without prejudice).

## CONCLUSION

For the reasons set forth herein, Peele's TRO Motion is DENIED, Defendants' Motion to Dismiss is GRANTED, and Peele's Complaint is DISMISSED without prejudice and without leave to amend. The Clerk of Court is DIRECTED to close the file and terminate this action.

IT IS SO ORDERED.

DATED: November 16, 2026, at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

Cassandra Peele vs. Joseph H. Campos II, et al.; Civil No. 26-00473 DKW-RT; **ORDER (1) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, (2) GRANTING DEFENDANTS' MOTION TO DISMISS, AND (3) DISMISSING THE COMPLAINT WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**